# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:16-cv-02022-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| OMICS GROUP INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court is the Motion for Preliminary Injunction, (ECF No. 9), filed by Plaintiff Federal Trade Commission ("the FTC"). Defendants OMICS Group Inc. ("OMICS"), iMedPub LLC ("iMedPub"), Conference Series LLC ("Conference Series"), and Srinubabu Gedela ("Gedela") (collectively "Defendants") filed a response, (ECF No. 32), and the FTC filed a Reply, (ECF No. 34). Also pending before the Court is Defendants' Motion to Dismiss. (ECF No. 31). The FTC filed a response, (ECF No. 35), and Defendants filed a reply, (ECF No. 36). For the reasons discussed herein, the FTC's Motion for Preliminary Injunction is GRANTED and Defendants' Motion to Dismiss is DENIED.

## I.   BACKGROUND

The FTC brings this action pursuant to Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), alleging that Defendants engaged in unfair and deceptive practices with respect to the publication of online academic journals and organization of scientific conferences. (*See* Compl., ECF No. 1). Defendants claim to operate hundreds of online academic journals on a wide variety of topics, including medicine, chemistry, nursing, engineering, and genetics. (Mot. for Prelim. Inj. 2:1–12, ECF No. 9; *see also* Defs.' Mot. to Dismiss 4:21–28, ECF No. 31). According to the FTC, Defendants make numerous misrepresentations regarding the nature and reputation of their journals in order to attract consumers. *Id.* Furthermore, Defendants

allegedly fail to disclose that they charge significant fees in exchange for their publication service. *Id.* Finally, Defendants allegedly make numerous misrepresentations in connection with the marketing of their scientific conferences. *Id.*

The FTC asserts that Defendants OMICS, iMedPub, and Conference Series (collectively "Corporate Defendants") have operated as a common enterprise in violating Section 5(a) and therefore are jointly and severally liable. (Compl. ¶ 10). The FTC further asserts that Gedela has "formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise." (*Id.*). Based on these allegations, the FTC initiated the instant action and filed the Motion for Preliminary Injunction. (ECF Nos. 1, 9). Specifically, the FTC seeks a preliminary injunction that: (1) restrains Defendants from engaging in deceptive practices with respect to the marketing and sale of academic journal publishing services and scientific conference services; (2) requires Defendants to identify assets and make an accounting of their present financial condition and certain business information; and (3) requires Defendants to preserve records. (Mot. for Prelim. Inj. 2:14–21).

## II.  LEGAL STANDARD

### A) Preliminary Injunction

Under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), the Court may grant the FTC a preliminary injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b). Section 13(b) of the FTC Act, therefore, "places a lighter burden on the Commission than that imposed on private litigants by the traditional equity standard." *F.T.C. v. Warner Commc'n, Inc.*, 742 F.2d 1156, 1159 (9th Cir. 1984). Under this more lenient standard, the FTC need not show irreparable harm; instead, it must only demonstrate (1) that it is likely to succeed on the merits and (2) that the equities weigh in favor

of an injunction. *Id.* at 1160; *see also F.T.C. v. World Wide Factors*, 882 F.2d 344, 346 (9th Cir. 1989).

A court's authority to grant injunctive relief under Section 13(b) includes "all the inherent equitable powers . . . for the proper and complete exercise" of the court's equity jurisdiction. *F.T.C. v. H.N. Singer, Inc.*, 668 F.2d 1107, 1112 (9th Cir. 1982) (citations omitted). One such power is the authority to freeze a defendant's assets. *Id.* at 1113; *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1088–89 (9th Cir. 1985). As the Ninth Circuit emphasized in *H.N. Singer*, an order freezing assets is a form of "ancillary relief" rather than a primary remedy. *See* 668 F.2d at 1112–13. "Courts have inherent equitable powers to grant ancillary relief, other than a preliminary injunction restraining future violations of the law, when there is no likelihood of recurrence." *Evans Prods.*, 775 F.2d at 1088. "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

## III.    DISCUSSION

### A.    Likelihood of Success on the Merits

Section 5 of the FTC Act prohibits "unfair or deceptive practices in or affecting commerce." 15 U.S.C. § 45. An act or practice is deceptive under Section 5 if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009). A misrepresentation is material if it involves facts that a reasonable person would consider important in choosing a course of action. *See FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1201 (9th Cir. 2006). Express claims are presumed material, so consumers are not required to question their veracity to be deemed reasonable. *See Pantron I*, 33 F.3d 1088, 1095–96 (9th Cir. 1994). Furthermore, the FTC need not prove reliance by each consumer misled by

Defendants. *See FTC v. SlimAmerica, Inc.*, 77 F. Supp. 2d 1263, 1275 (S.D. Fla. 1999); *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 605 (9th Cir. 1993).

In considering whether a claim is deceptive, the Court must consider the "net impression" created by the representation, even when the solicitation contains some truthful disclosures. *See Cyberspace*, 453 F.3d at 1200. The FTC need not prove that Defendants' misrepresentations were made with an intent to defraud or deceive or in bad faith. *See, e.g., Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988). A representation is also deceptive if the maker of the representation lacks a reasonable basis for the claim. *See FTC v. Direct Mktg. Concepts, Inc.*, 624 F.3d 1, 8 (1st Cir. 2010). Where the maker lacks adequate substantiation evidence, they necessarily lack any reasonable basis for the claims. *Id.* Furthermore, any disclaimers must be prominent and unambiguous to change the apparent meaning and leave an accurate impression. *See Kraft, Inc. v. FTC*, 970 F.2d 311 (7th Cir. 1992). The FTC Act is violated if a seller "induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract." *Resort Car Rental Sys., Inc. v. FTC*, 518 F.2d 962, 964 (9th Cir. 1975).

"[T]he burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006). Thus, the burden is on the FTC to demonstrate that it is likely to prevail on its claims that Defendants engaged in: (1) misrepresentations regarding journal publishing; (2) a deceptive failure to disclose publishing fees; and (3) misrepresentations regarding conferences. "Because irreparable injury must be presumed in a statutory enforcement action, the district court need only . . . find some chance of probable success on the merits." *World Wide Factors*, 882 F.2d at 347 (internal quotation marks omitted).

The Court finds that the FTC has satisfied its burden of demonstrating a likelihood of success on the merits of its claims, and considers each claim in turn.

### 1) *Misrepresentations Regarding Journal Publishing*

The evidence produced by the FTC demonstrates that Defendants engaged in probable misrepresentations regarding journal publishing. On the OMICS website, for example, OMICS makes numerous representations indicating that it follows standard peer-review practices. (*See* PX12 Att. L at 657, 773, 748, Ex. 12 to Mot. for Prelim Inj., ECF No. 9-12).[1] Under standard industry practice, the peer review process often takes several weeks or even months and involves multiple rounds of substantive feedback from experts in the related field. (*See* PX13 ¶¶ 9–10). In contrast, the FTC has provided evidence that Defendants' peer review practices, in numerous instances, took a matter of days and contained no comments or substantive feedback. (*See* PX04 ¶ 4; PX07 ¶ 4; PX06 ¶¶ 5–6; PX09 ¶ 5; PX10 ¶ 10).

This inadequacy is further demonstrated by statements from purported "editors," which indicate that they never received manuscripts to review or else even agreed to be listed as an editor. (*See, e.g.*, PX03 ¶¶ 3–4; PX11 ¶ 7). In some instances, individuals listed as "editors" without permission requested removal from the website without success. (*See, e.g.*, PX02 ¶ 4; PX08 ¶¶ 4–7; PX06 ¶ 11). In other instances, Defendants sent out email solicitations on behalf of academics without their permission. (*See* PX11 ¶ 7). With respect to the journals themselves, Defendants use names that are nearly identical to other respected journals, which has led to consumers mistakenly submitting articles to Defendants' journal. (*See* PX07 ¶ 3).

The FTC has also submitted evidence demonstrating that Defendants misrepresent the "impact factor" of their journals (i.e. the number of citations in other reputable journals). Notably, the term impact factor is understood in the community to mean the annual calculation released by Thomson Reuters. (PX13 ¶ 12). Defendants, however, base their impact factor off

---

[1] Each "PX" exhibit can be found attached to the FTC's Motion for Preliminary Injunction, (ECF No. 9). The Court will only provide the "PX" citation for the remainder of this Order.

of a Google Scholar search. (*See* PX12 Att. L at 770). Additionally, the FTC has submitted

evidence that Defendants misleadingly represent that their publications are indexed in well-

known, reputable indexing services. (*See, e.g*., PX12 Att. L at 643, 657; PX13 ¶¶ 17–18, 25–

27). In opposition, Defendants have submitted evidence purporting to demonstrate the

legitimacy of their businesses. However, the FTC has substantively responded to this evidence

and demonstrated the numerous flaws and inaccuracies in Defendants' representations. The

Court therefore finds that the evidence in the record is sufficient to support a preliminary

conclusion that Defendants made misrepresentations regarding their journal publishing.

### 2) *Deceptive Failure to Disclose Publishing Fees*

The evidence produced by the FTC indicates that Defendants deceptively fail to disclose

publishing fees. Notably, the FTC has provided evidence that Defendants send out emails

soliciting the submission of articles to their service but make no mention of associated fees.

(*See, e.g.,* PX04 Att. A at 6, PX09 Att. A at 4; PX10 Att. D at 16). Furthermore, the fee

disclosures that are made on Defendants' websites are difficult to find. (*See* PX12 Att. L at

632). Moreover, as the email solicitations invite consumers to submit articles directly through

email, a consumer may end up submitting an article without even viewing the website. (*See*

PX04 Att. A at 6). The FTC has also submitted evidence indicating that industry practice when

charging publication fees is to clearly disclose the fees before authors submit their articles. (*See*

PX13 ¶¶ 4, 6). A consumer could therefore reasonably and mistakenly assume that there is no

charge for publishing in Defendants' journals. (*See, e.g.,* PX04 ¶ 5). Furthermore, when

consumers contest Defendants' publication fees and ask their articles to be withdrawn,

Defendants have ignored those requests and continued demanding payment. (*See, e.g.,* PX04 ¶¶

6–8; PX06 ¶¶ 6, 8; PX07 ¶¶ 5, 8). In some instances, Defendants only removed the articles

after the threat of legal action. (*See, e.g.,* PX07 ¶¶ 9–10). The FTC asserts that these practices

not only cause financial harm to consumers, but also prevent consumers from resubmitting

articles to more reputable journals. (*See* Mot. for Prelim. Inj. 12:23–27). The Court therefore finds that the evidence in the record is sufficient to support a preliminary conclusion that Defendants deceptively fail to disclose publishing fees.

### 3) Misrepresentations Regarding Conferences

The evidence produced by the FTC demonstrates that Defendants engaged in probable misrepresentations regarding their conferences. Notably, the FTC has provided evidence indicating that Defendants advertise the attendance and participation of prominent academics and researchers without their permission or actual affiliation. (*See* PX05 ¶¶ 3,5; PX12 Att. U at 1045). In numerous instances, individuals have requested unsuccessfully to have their names removed from Defendants' conference advertising materials. (*See, e.g.,* PX03 ¶¶ 6–12). Often, Defendants do not remove an individuals' name until the threat of legal action. (*See, e.g.,* PX05 ¶ 7). Had consumers known of Defendants' misrepresentations, they may not have agreed to participate in or be affiliated with Defendants' conferences. The Court therefore finds that the evidence in the record is sufficient to support a preliminary conclusion that Defendants made misrepresentations regarding their conferences.

### 4) Defendants Engaged in a Common Enterprise

"[E]ntities constitute a common enterprise when they exhibit either vertical or horizontal commonality—qualities that may be demonstrated by a showing of strongly interdependent economic interests or the pooling of assets and revenues." *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1142–43 (9th Cir. 2010). In deciding whether a common enterprise exists, courts may consider such factors as whether the companies were under common ownership and control; whether they pooled resources and staff; whether they shared phone numbers, employees, and email systems; and whether they jointly participated in a "common venture" in which they benefited from a shared business scheme or referred customers to one another. *Id.* at 1243. Where the same individuals transact business through a "maze of interrelated

companies," the whole enterprise may be held liable as a joint enterprise. *FTC v. John Beck Amazing Profits, LLC*, 865 F. Supp. 2d 1052, 1082 (C.D. Cal. 2012).

In support of its claim that the Corporate Defendants engaged in a common enterprise, the FTC points out that "the various business entities share common ownership and management and operate from the same principal place of business in India. (Mot. for Prelim. Inj. 12:4–6). Furthermore, the FTC provided evidence showing that the websites belonging to the three corporations use similar language, often link to one another, and advertise some of the same journals. (*Id.* 2:2–3:17). With respect to common ownership, the FTC has demonstrated that Defendant Gedela is the authorized signatory on the financial accounts of the Corporate Defendants, as well as the registrant for each of their websites. (*Id.*). The FTC has also provided evidence that each company is a beneficiary of and participant in the same shared business scheme.

In opposition, Defendants point out perceived gaps in the FTC's evidence and incorrectly assume that the FTC needs to demonstrate each one of the above factors to show a common enterprise. For example, Defendants note that "the FTC [has not] provided evidence which proves the type of address the principal place of business is." (Defs.' Resp 11:11–16, ECF No. 32). Defendants theorize, without citing to any evidence, that as internet companies "it is highly likely that the address is simply a common registered agent similar to those based in the United States where companies have no actual relationship to each other . . . ." (*Id.*). The Court does not find this theoretical argument sufficient to counter the evidence that Defendants share a principal place of business and have common ownership. Based on the record, the Court finds that the FTC is likely to succeed in proving that the Corporate Defendants engaged in a common enterprise.

*5) Gedela's Liability for Injunctive and Monetary Relief*

Personal liability for violations of the FTC Act fall into two categories: liability for injunctive relief and liability for monetary relief. Individuals are liable for injunctive relief if they directly participate in the deceptive acts or have the authority to control them. *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997); *F.T.C. v. Stefanchik*, 559 F.3d 924, 931 (9th Cir. 2009). To subject an individual to monetary liability, the FTC must show that the individual had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud and intentionally avoided the truth. *Publ'g Clearing House*, 104 F.3d at 1171; *Stefanchik*, 559 F.3d at 931. "[T]he extent of an individual's involvement in a fraudulent scheme alone is sufficient to establish the requisite knowledge for personal restitutionary liability." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1235 (9th Cir. 1999).

The evidence produced by the FTC clearly demonstrates that Gedela's participation and control over the Corporate Defendants meets the liability standard at this stage. As detailed above, Gedela is the founder, principal, and owner of the Corporate Defendants. He has signatory authority over the corporations' financial accounts and is the billing contact for Defendants' websites. The OMICS website itself openly proclaims Gedela as the "CEO and Managing Director," and states that iMedPub LLC and Conference Series LLC are subsidiaries of OMICS International. (PX12 Att. L at 937; PX22 Att. C at 17). Furthermore, Gedela's own sworn declaration does not dispute his participation in the Corporate Defendants' business. (*See* ECF No. 33).

Defendants cite to a number of cases denying individual liability based on an individual's limited involvement in a company. (Defs.' Resp 13:24–15:19); *see, e.g., FTC v. Swish Mktg.*, 2010 WL 653486, at *5 (N.D. Cal. Feb. 22, 2010) (finding that defendant's "status as CEO, standing alone" was insufficient to support individual liability). The Court

does not find Defendants' cited authority persuasive. Notably, these cases involve individuals with far less involvement than the evidence provides in this case. Based on the record, the Court finds the evidence sufficient to support a preliminary conclusion that Gedela is liable for injunctive and monetary relief.

### B. Balancing of the Public and Private Interests

In balancing the equities, public equities receive far greater weight than private equities. *Affordable Media*, 179 F.3d at 1236. Public equities include economic benefits and competitive advantages for consumers, and effective relief for the FTC. *See Warner Commc'n*, 742 F.2d at 1165. "[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight." *World Wide Factors*, 882 F.2d at 347. If the FTC demonstrates a likelihood of success on the merits, "a countershowing of private equities alone does not justify denial of a preliminary injunction." *Warner Commc'n*, 742 F.2d at 1165.

The Court finds that the public equities are substantial and outweigh the private equities in this case. As discussed above, the FTC has sufficiently demonstrated that Defendants likely engaged in unlawful and deceptive representations regarding their publishing, fee scheme, and conferences. As a result, the evidence clearly demonstrates that the public equities—protection of consumers from Defendants' deceptive practices and effective enforcement of the law— weigh heavily in favor of granting injunctive relief. Absent such an injunction, the Court finds it likely that Defendants will continue to engage in deceptive practices.

In contrast, the Court does not find the private equities in this case compelling. As a general rule, compliance with the law is not an unreasonable burden. *See World Wide Factors*, 882 F.2d at 347 ("[T]here is no oppressive hardship to defendants in requiring them to comply with the FTC Act [and] refrain from fraudulent misrepresentation . . . ."). Here, an injunction is necessary to prevent potential harmful and illegal behavior and will not prohibitively impact

any of Defendants' legitimate business activities.  Defendants argue in their opposition that "the practical effect of a preliminary injunction in the eyes of the public would be that Defendants are guilty of fraud and other wrongful actions" and therefore an injunction would be "irreparably devastating" to the Defendants. (Defs.' Resp. 16:13–17).  Defendants' assertion is hardly unique—the same faulty argument could be made in regard to any preliminary injunction.  Defendants argument is therefore unpersuasive.[2]  Based on the foregoing, the Court finds that the balance of hardships favors a preliminary injunction.

## C.    Defendants' Motion to Dismiss

Defendants seek dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Mot. to Dismiss, ECF No. 31).  Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b) the plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

---

[2] Defendants additionally argue that, to the extent a preliminary injunction is granted, the proposed accounting provision is unjustified. (Defs.' Resp 17:19–28).  In support of this assertion, Defendants argue that the accounting constitutes mandatory relief and therefore disfavored. (*Id.*).  Defendants do not offer any other substantive argument.  Here, the Court finds the accounting requirement justified for the FTC to determine the scope of harm and effectuate potential relief pending the outcome of the case.  The Court further notes that such requirements are frequently granted in FTC matters throughout this circuit. *See, e.g., FTC v. AMG Servs., Inc.*, 2016 WL 1275612, at *9 (D. Nev. May 6, 2015); *FTC v. Vemma Nutrition Co.*, 2015 WL 11118111, at *14 (D. Ariz. Sept. 18, 2015).

Defendants argue that the Complaint fails to adequately allege that Defendants engaged in unfair or deceptive practices. (Defs.' Mot. to Dismiss 5:8–14). Moreover, Defendants argue that the undisputed facts demonstrate that Defendants, in fact, have not engaged in unfair or deceptive practices. (*Id.* 5:15–22). For the reasons already stated in this Order, Defendants' argument concerning the sufficiency of the evidence against them fails. The issue then turns on whether the Complaint sufficiently states a claim.

As a preliminary matter, the Court notes that Defendants' Motion incorrectly focuses only on the paragraphs explicitly detailing the respective claims. In doing so, Defendants effectively ignore the preceding forty-two paragraphs of allegations concerning the Defendants and accepted industry practice. *See Arthur J. Gallgher & Co. v. Lang*, No. C 14-0909 CW, 2014 WL 4354670, at *3 (N.D. Cal. Sept. 2, 2014) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) ("[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible.").

Nonetheless, Defendants argue that the FTC fails to meet the pleading standard under both Rule 8 and Rule 9(b), which requires heightened pleading for allegations of fraud. (Defs.' Mot to Dismiss 8:22–13:21). Specifically, Defendants assert that the Complaint fails to allege the "who, what, when, where, and how" for each Defendant. (*Id.* 12:18–20). The Ninth Circuit, however, has relaxed Rule 9(b)'s particularity requirements in circumstances "where it may be difficult for the plaintiff to identify the specific actions that a corporate officer took in causing the harm." *F.T.C. v. AMG Servs.*, 2012 WL 6800778, at *4 (D. Nev. Dec. 28, 2012) (citing *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)). The *Moore* standard is particularly appropriate where the plaintiff is reasonably unable to obtain specific knowledge at the pleading stage regarding "the particularized conduct of each defendant in the alleged corporate fraud." *Id.* at *4. In such instances, it is sufficient for the plaintiff to categorize

defendants based on their function in a scheme and then give sufficient detail of the alleged scheme. *Id.* at \*5.

Here, given the nature of the allegations, the Court finds that the relaxed *Moore* standard applies. The allegations in the Complaint span across multiple years and involve a substantial number of allegedly wronged consumers. Moreover, the facts concerning Gedela's specific actions in the scheme were reasonably unattainable at the initial pleading stage. With respect to the Corporate Defendants, the Complaint meets the 9(b) standard by establishing that all allegations apply to each Defendant as part of an alleged joint scheme. Notably, the Complaint sufficiently alleges the same "common enterprise" theory as discussed above. (*See* Compl. ¶¶ 6–10). Under the common enterprise theory, Defendants' contention that the Complaint fails for not particularizing allegations to each Corporate Defendant is misplaced, as each are liable for the scheme as a whole. *See John Beck*, 865 F. Supp. 2d at 1082.

Accordingly, and upon review, the Court finds that the Complaint provides Defendants sufficient detail to prepare an adequate answer to the allegations and complies with the pleading requirements. *Moore*, 885 F.2d at 540. Furthermore, the allegations in the Complaint clearly establish the requisite elements for the FTC's claims under Section 5(a). Based on the foregoing, the Court denies Defendants' Motion to Dismiss and grants the FTC's Motion for Preliminary Injunction. The Court shall issue a preliminary injunction consistent with the definitions set forth below.

## IV.  DEFINITIONS

1.  **"Clearly and Conspicuously"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

      a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is

presented. In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

b.       A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.       An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.       In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.       The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.       The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.       The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

h.       When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

2.   **"Defendants"** means the Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination. "Corporate Defendants" means OMICS

Group Inc., also doing business as OMICS Publishing Group, iMedPub LLC, and Conference Series LLC, and their successors and assigns. "Individual Defendant" means Srinubabu Gedela, and any other name by which he might be known.

3. **"Impact Factor" or "Impact Score"** means, with respect to any journal or other publication, any measure reflecting the number or average number of citations (whether weighted or not) to articles published in that journal or publication during a certain period of time, including, but not limited to, the score assigned to a journal by Thomson Reuters and published in Thomson Reuters' Journal Citation Reports, a journal's Eigenfactor, or SCImago Journal Rank.

4. **"Person"** means a natural person, organization, or other legal entity, including a corporation, partnership, proprietorship, association, cooperative, or any other group or combination acting as an entity.

## V. <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that the FTC's Motion for Preliminary Injunction (ECF No. 9) is **GRANTED** pursuant to the following terms:

**PROHIBITED MISREPRESENTATIONS REGARDING PUBLISHING SERVICES**

**I. IT IS HEREBY ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any publishing good or service are hereby preliminarily restrained and enjoined from:

1. misrepresenting or assisting others in misrepresenting, expressly or by implication:

a. the nature, credibility, legitimacy, or reputation of any journal or other publication;

b. that any journal or other publication follows or otherwise engages in peer review or any other process by which work product submitted to that journal or publication is reviewed;

c. that any Person is an editor of, a member of an editorial board for, or otherwise associated or affiliated with any journal or other publication;

d. that any Person is involved in the selection or review of any article, manuscript, or other work product submitted for publishing in any journal or other publication;

e. the Impact Factor or Impact Score of any journal or other publication, or that any journal or other publication has a high Impact Factor or Impact Score;

f. the inclusion of any journal or other publication in any academic journal indexing service, including but not limited to PubMed, PubMed Central, or MEDLINE;

g. any costs or fees associated with publishing an article, manuscript, or other work product;

h. any material restrictions, limitations, or conditions on publishing an article, manuscript, or other work product; or

i. any other fact material to a consumer's decision to submit an article, manuscript, or other work product for publishing in any journal or other publication;

2. making any representation, or assisting others in making any representation, expressly or by implication, that any journal or other publication is peer-reviewed unless any work product submitted to that journal or publication is reviewed by peers

who are subject matter experts, who are not journal employees, and who evaluate the quality and credibility of the work product, and the representation is otherwise non-misleading;

3.  making, or assisting others in making, expressly or by implication, any representation covered by this Section I, unless the representation is non-misleading and, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that is sufficient to substantiate that the representation is true.

## PROHIBITED MISREPRESENTATIONS REGARDING SCIENTIFIC CONFERENCES

**II.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting, registering, or accepting fees for any scientific or academic conference are hereby preliminarily restrained and enjoined from:

1.  misrepresenting or assisting others in misrepresenting, expressly or by implication:

    a.  the nature, credibility, legitimacy, or reputation of any conference, symposium, forum, workshop, or other meeting of professionals;

    b.  that any Person will attend, participate in, or is otherwise associated or affiliated with any conference, symposium, forum, workshop, or other meeting of professionals;

    c.  the panels, forums, schedule, agenda, or other presentations of any conference, symposium, forum, workshop, or other meeting of professionals;

d. any costs or fees to register or attend any conference, symposium, forum, workshop, or other meeting of professionals;

e. any material restrictions, limitations, or conditions on registering or attending any conference, symposium, forum, workshop, or other meeting of professionals; or

f. any other fact material to a consumer's decision to register for or attend any conference, symposium, forum, workshop, or other meeting of professionals;

2. making, or assisting others in making, expressly or by implication, any representation covered by this Section II, unless the representation is non-misleading and, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that is sufficient to substantiate that the representation is true.

**REQUIRED DISCLOSURES REGARDING PUBLISHING PRACTICES**

**III.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from soliciting from a consumer or publishing articles, manuscripts, or other work product for publication, without disclosing Clearly and conspicuously:

1. all costs to the consumer associated with submission or publication of such work product;

2. if Defendants will not have such work product reviewed by peers who are subject matter experts, who are not journal employees, and who evaluate the quality and credibility of the work product, a statement informing consumers of such fact; and

3. if Defendants will not allow consumers to withdraw such work product from publication after it has been submitted, a statement informing consumers of such fact.

## REQUIRED DISCLOSURES REGARDING JOURNAL IMPACT FACTORS

**IV.**     **IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby preliminarily restrained and enjoined from making any representation, expressly or by implication, regarding the Impact Factor or Impact Score of any journal or publication, (a) unless the representation is non-misleading and (b) without disclosing clearly and conspicuously: (1) whether the Impact Factor or Impact Score is calculated by Thomson Reuters; and (2) if the Impact Factor or Impact Score is not calculated by Thomson Reuters, who calculated that Impact Factor or Impact Score and how that Impact Factor or Impact Score is calculated.

## FINANCIAL AND BUSINESS ACCOUNTING

**V.**     **IT IS FURTHER ORDERED** that each Defendant, within ten (10) calendar days of service of this Order, shall prepare and deliver to counsel for the FTC:

1. For the Individual Defendant, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with FTC counsel) on the form of Attachment A to this Order captioned, "Form Re: Financial Statement for Individual Defendant."

2. For the Corporate Defendants, a completed financial statement accurate as of the date of service of this Order upon such Defendant (unless otherwise agreed upon with

FTC counsel) in the form of Attachment B to this Order captioned, "Form Re: Financial Statement for Business Entity Defendant."

3. For Defendants, the following information concerning their journal publication and conference organization operation:

    a.  total gross revenues on a monthly basis from 2009 to date, derived from (a) article publication fees paid by consumers for Defendants' publication services; (b) registration fees paid by consumers to attend Defendants' conferences;

    b.  total gross operating expenses on a monthly basis for 2009 to date allocated to (a) Defendants' journal publication operation; (b) Defendants' conference organization operation;

    c.  gross operating expenditures on a monthly basis per category for 2009 to date, including but not limited to payroll, advertising, marketing, utilities, and property leases;

    d.  gross capital expenditures for 2009 to date;

    e.  the name, email address, and affiliation of each individual listed on Defendants' websites or other marketing materials, including direct solicitations to consumers, as an editor or a member of an editorial board for one or more of Defendants' journals; and

    f.  the name, email address, and affiliation of each individual listed on Defendants' websites or other marketing materials, including direct solicitations to consumers, as speakers or organizers for Defendants' conferences.

## PRESERVATION OF RECORDS AND TANGIBLE THINGS

**VI.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other Persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are hereby enjoined from:

1. destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or business or personal finances, of Defendants, or any other entity directly or indirectly under the control of any Defendant;

2. failing to create and maintain books, records, and accounts which, in reasonable detail, accurately, fairly, and completely reflect the incomes, assets, disbursements, transactions and use of monies by any Defendant or any other entity directly or indirectly under the control of any Defendant.

## CONSUMER REPORTS

**VII.    IT IS FURTHER ORDERED** that the FTC may obtain credit reports concerning any Defendants pursuant to Section 604(a)(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1), and that, upon written request, any credit reporting agency from which such reports are requested shall provide them to the FTC.

## NOTICE TO EMPLOYEES AND AGENTS

**VIII.    IT IS FURTHER ORDERED** that within three (3) calendar days following service of this Order, Defendants shall provide a copy of this Order to each of their employees, editors, directors, officers, subsidiaries, affiliates, attorneys, independent contractors, representatives, franchisees, and all persons in active concert or participation with Defendants, to the extent

those persons' activities relate to the publication of online journals or the organization of scientific conferences. Within five (5) calendar days following service of this Order, Defendants shall provide the FTC with an affidavit identifying the names, titles, addresses, and telephone numbers of the persons and entities that Defendants have served with a copy of this Order in compliance with this provision.

## CORRESPONDENCE WITH PLAINTIFF

**IX.    IT IS FURTHER ORDERED** that for the purposes of this Order, all service on and correspondence to the FTC shall be sent via U.S. Express Mail or Federal Express and be addressed to: Ioana Rusu, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Mail Stop CC-10232, Washington, DC 20580. Telephone: (202) 326-2077; Facsimile: (202) 326-3768.

## SERVICE OF THIS ORDER

**X.    IT IS FURTHER ORDERED** that copies of this Order may be served by facsimile transmission, personal or overnight delivery, or U.S. Express Mail, by agents and employees of the FTC or any state or federal law enforcement agency or by private process server, on Defendants, or any other person or entity that may be subject to any provision of this Order.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER BY DEFENDANTS

**XI.    IT IS FURTHER ORDERED** that Defendants, within three (3) business days of receipt of this Order, shall submit to counsel for the FTC a truthful sworn statement acknowledging receipt of this Order.

**RETENTION OF JURISDICTION**

**XII.    IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.


        **DATED** this __29__ day of September, 2017.


                                            _____
                                            Gloria M. Navarro, Chief Judge
                                            United States District Judge