ALDEN F. ABBOTT
General Counsel
IOANA RUSU GORECKI
GREGORY A. ASHE
MICHAEL E. TANKERSLEY
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-2077 (Gorecki)
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2991 (Tankersley)
Facsimile: 202-326-3768
Email: igorecki@ftc.gov, gashe@ftc.gov,
       mtankersley@ftc.gov

DAYLE ELIESON
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br><br>    Plaintiff,<br><br>    v.<br><br>**OMICS GROUP INC.,** *et al*.,<br><br>    Defendants. | **Case No. 2:16-cv-02022-GMN-VCF**<br><br>**FTC'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

1

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................... 1

II.     COUNTERSTATEMENT OF MATERIAL FACTS ........................................................ 2

III.    DEFENDANTS FAIL TO DEMONSTRATE THAT THEY ARE ENTITLED TO
        SUMMARY JUDGMENT ............................................................................................ 19

        A. Legal Standard For Summary Judgment...................................................................... 19

        B. Because The FTC Does Not Need To Prove That Defendants' Actions Caused
           Substantial Injury To Consumers That Is Not Reasonably Avoidable By Consumers
           Themselves And Is Not Outweighed By Countervailing Benefits To Consumers Or
           Completion, Defendants Fail To Establish Their Summary Judgment Burden ....... 20

        C. Even Under The Deception Standard, Defendants Fail To Establish Their Summary
           Judgment Burden ........................................................................................................ 23

           1.  Defendants Misrepresent Their Academic Journal Publishing Activities As
               Alleged In Count I ................................................................................................ 24

           2.  Defendants Misrepresent Their Scientific Conference Activities As Alleged In
               Count II ................................................................................................................ 27

           3.  Defendants Fail To Disclose Adequately Their Publishing Fees As Alleged In
               Count III .............................................................................................................. 28

IV.     CONCLUSION........................................................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*Adickes v. S.H. Kress & Co.*,
     398 U.S. 144 (1970)..................................................................20

*Amarel v. Connell*,
     102 F.3d 1494 (9th Cir. 1996) ...............................................18

*Anderson v. Liberty Lobby, Inc.*,
     477 U.S. 242 (1986).................................................................19

*Celotex Corp. v. Catrett*,
     477 U.S. 317 (1986).................................................................20

*FTC v. AMG Servs.*,
     29 F. Supp. 3d 1338 (D. Nev. 2014).....................................29

*FTC v. AMG Servs.*,
     2017 U.S. Dist. LEXIS 66689 (D. Nev. May 1, 2017).......27

*FTC v. AMG Services*,
     2016 U.S. Dist. LEXIS 135765 (D. Nev. Sep. 30, 2016) ....20

*FTC v. Cantkier*,
     767 F. Supp. 2d 147 (D.D.C. 2011) ......................................23

*FTC v. Cyberspace.com, LLC*,
     453 F.3d 1196 (9th Cir. 2006) ..........................................23, 29

*FTC v. Five-Star Auto Club*,
     97 F. Supp. 2d 502 (S.D.N.Y. 2000)......................................29

*FTC v. IFC Credit Corp.*,
     543 F. Supp. 2d 925 (N.D. Ill. 2008) ....................................23

*FTC v. Ivy Capital, Inc.*,
     2013 U.S. Dist. LEXIS 42369 (D. Nev. Mar. 26, 2013).......23

*FTC v. Johnson*,
     96 F. Supp. 3d 1110 (D. Nev. 2015) .....................................21

*FTC v. Neovi, Inc.*,
     604 F.3d 1150 (9th Cir. 2010) ...............................................21

*FTC v. OMICS Grp. Inc.*,
  2017 U.S. Dist. LEXIS 161910 (D. Nev. Sep. 29, 2018) ................................................. 27

*FTC v. Pantron I. Corp.*,
  33 F.3d 1088 (9th Cir. 1994) ..................................................................................... 23

*FTC v. Publ'g Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ................................................................................... 20

*FTC v. Stefanchik*,
  559 F.3d 924 (9th Cir. 2009) ..................................................................................... 23

*FTC v. World Travel Vacation Brokers*,
  861 F.2d 1020 (7th Cir. 1988) ................................................................................... 27

*In re Int'l Harvester Co.*,
  104 F.T.C. 949 (1984) ................................................................................................ 22

*Kraft, Inc. v. FTC*,
  970 F.2d 311 (7th Cir. 1992) ..................................................................................... 27

*Lyman Commerce Sols., Inc. v. Lung*,
  2013 U.S. Dist. LEXIS 124689 (S.D.N.Y. Aug. 30, 2013) ........................................... 4

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ................................................................................................... 20

*Nicor Energy v. Dillon*,
  2004 U.S. Dist. LEXIS 86 (N.D. Ill. Jan. 7, 2004) ...................................................... 4

*Paddack v. Dave Christensen, Inc.*,
  745 F.2d 1254 (9th Cir. 1984) ................................................................................... 18

*Removatron Int'l Corp. v. FTC*,
  884 F.2d 1489 (1st Cir. 1989) ................................................................................... 27

*In re Rogstad*,
  126 F.3d 1224 (9th Cir. 1997) ................................................................................... 24

*Techmer Accel Holdings, LLC v. Amer*,
  2010 Del. Ch. LEXIS 252  (Del. Ch. Dec. 29, 2010) .................................................. 4

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
  809 F.2d 626 (9th Cir. 1987) ..................................................................................... 20

iii

*Washington Physicians Serv. Ass'n v. Gregoire,*
   147 F.3d 1039 (9th Cir. 1998) ........................................................................24

## STATUTES & REGULATIONS

15 U.S.C. § 45(a) .................................................................................................1, 21

15 U.S.C. § 45(n) ................................................................................................1, 21

Pub. L. No. 103-312 (1994) .....................................................................................21

Fed. R. Civ. P. 37(c)(1) ...........................................................................................18

Fed. R. Civ. P. 56(a) ...............................................................................................19

Fed. R. Civ. P. 56(c)(2) .............................................................................................2

Del. Code tit. 6, § 18-804.......................................................................................4, 7

Nev. Rev. Stat. § 78.585 ........................................................................................4, 7

## MISCELLANEOUS

140 Cong. Rec. H 6006, *18 (July 21, 1994) .............................................................21

**I. INTRODUCTION**

Plaintiff Federal Trade Commission ("FTC") has amassed voluminous and incontrovertible evidence that Defendants have engaged in deceptive acts and practices in connection with marketing their academic publishing and conference services. As set forth in great detail in the FTC's motion for summary judgment (ECF No. 86), Defendants claim to operate hundreds of online academic journals and host numerous scientific conferences. To induce consumers to submit articles to their journals for publication, Defendants make numerous misrepresentations regarding the nature and reputation of their journals and they fail to disclose adequately the significant fees associated with their publishing services. To persuade consumers to register for their conferences, they misrepresent that specific individuals have agreed to participate in those conferences. The FTC alleges that these practices violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

In their cross-motion for summary judgment (ECF No. 89), Defendants argue that the FTC failed to demonstrate that Defendants' deceptive marketing practices caused substantial injury to consumers that consumers could not reasonably avoid themselves and that were not outweighed by countervailing benefits to consumers or competition as required by Section 5(n) of the FTC Act, 15 U.S.C. § 45(n), and that, accordingly, the Court should enter summary judgment in their favor. Defendants, however, ignore the plain language of the FTC Act, legislative history, and long-standing case law: Section 5(n) sets forth the standard for unfair acts or practices — not deceptive acts or practices. Because the FTC's complaint seeks remedies for Defendants' deceptive acts or practices, the criteria set forth in Section 5(n) are not elements of the three counts alleged here.

To the extent that Defendants make any argument that their activities were not deceptive, their evidence consists solely of the conclusory, self-serving declarations of individual Defendant Gedela and Defendants' Indian counsel Kishore Vattoki.[1]  As detailed in the FTC's Counterstatement of Material Facts, in many instances, Defendants omit relevant information making their statement of facts misleading; in other instances, their asserted facts are simply not material to whether Defendants violated the FTC Act.  In short, neither Defendants' facts nor their argument supports entry of summary judgment in their favor.

## II.      COUNTERSTATEMENT OF MATERIAL FACTS

| FTC Responses to Defendants' Statement of Material Facts | Responds to Paragraph[2] |
|---|---|
| **A.  Defendants and "Open Access" Publishing** | |
| (1)  The FTC does not dispute that Defendants OMICS Group Inc., iMedPub LLC, and Conference Series LLC are headquartered in Hyderabad, India.  The FTC notes, however, that (1) Defendants OMICS, iMedPub, and Conference Series have used common addresses for their United States locations and business registrations, (2) OMICS Group has used mailing addresses in Henderson, Nevada, Westlake Village, California, and Foster City, California, which addresses have been used in Defendants' business transactions and consumer-facing advertising, email solicitations, and | ECF No. 89 at 7, Section II.A. first paragraph, first sentence |

[1] Separately, the FTC has filed an objection to the Vattikoti declaration pursuant to Federal Rule of Civil Procedure 56(c)(2).  (ECF No. 96.)

[2] Defendants' Statement of Material Facts consists of six unnumbered paragraphs in three sections ("Defendants and 'Open Access' Publishing," "Defendants' Publishing Practices," and "Consumer Complaint History") and appears at ECF No. 89 at 7-9.  To assist the Court, for each of the FTC's counterstatement of facts, the FTC has identified the location in Defendants' Motion of the corresponding facts to which it responds.

| | | |
|---|---|---|
| | websites, (3) Defendant iMedPub has used mailing addresses in Wilmington, Delaware, which addresses have been used by Defendants in consumer-facing communications and in corporate registration documents, and (4) Defendants also admit that Conference Series has used mailing addresses in Wilmington, Delaware, and it has used addresses in Henderson, Nevada and West Lake, California in Defendants' business transactions and consumer-facing communications.  (ECF No. 86 at 7, SMF ¶ 14.)  The FTC also notes that Defendants have done business with consumers located throughout the United States and the world.  (*Id.* at 8, SMF ¶ 15.) | |
| (2) | The FTC does not dispute that Defendant OMICS Group Inc. was originally formed as a Nevada corporation on March 29, 2012, and filed a Certificate of Dissolution on June 23, 2017; Defendant iMedPub LLC was originally formed as a Delaware limited liability company on February 18, 2015, and filed a Certificate of Cancellation on July 20, 2017; and Defendant Conference Series was originally formed as a Delaware limited liability company on July 28, 2015, and filed a Certificate of Cancellation on June 26, 2017.  The FTC notes, however, that apart from these filings, no other action has been taken to dissolve these entities and that these entities continue to be used in Defendants' publishing and conference business.  (ECF No. 86 at 3, SMF ¶ 5.)  The FTC also notes that, in any | ECF No. 89 at 7, Section II.A. first paragraph, first sentence, note 6 |

| | | |
|---|---|---|
| | event, the purported dissolution does not alter these entities' amenability to suit or liability. *See* Nev. Rev. Stat. § 78.585; Del. Code tit. 6, § 18-804.[3] | |
| (3) | The FTC does not dispute that from 2012 to 2017, OMICS was part of a group of companies that published "Open Access" scientific journals through the internet website (https://www.omicsonline.org/), or that from 2015 to 2017, iMedPub published academic journals, or that from 2015 to 2017, Conference Series organized scientific conferences around the world. The FTC notes, however, that in 2009, while studying in the United States, Defendant Gedela registered "OMICS Publishing Group" as his fictitious business name and established a US bank account for his business, and processed payments and advertised conferences and publications using the name of OMICS Publishing Group. (ECF No. 86 at 2-3, SMF ¶ 2.) The FTC also notes that Defendants OMICS, iMedPub, and Conference Series "do not operate individually, but rather as a group under Omics Group Inc." (*Id.* at 7, SMF ¶ 13.) The FTC also notes that Defendants describe OMICS Group, iMedPub, and Conference Series, as | ECF No. 89 at 7, Section II.A. first paragraph, second, third, and fourth sentences |

---

[3] *Lyman Commerce Sols., Inc. v. Lung*, 2013 U.S. Dist. LEXIS 124689, at *14 (S.D.N.Y. Aug. 30, 2013) (Delaware law permits a suit to be maintained against a limited liability company if it is commenced before the company is cancelled.); *Nicor Energy v. Dillon*, 2004 U.S. Dist. LEXIS 86, at *11 (N.D. Ill. Jan. 7, 2004) (Delaware statutes provides that dissolution of LLC must include making provision for resolving pending actions, known claims, and anticipated claims). Because the cancellation certificates for iMedPub and Conference Series were filed before completing dissolution of these companies, the cancellation notices are premature under Del.Code, tit. 6 § 18-203 (certificate of cancelation to be filed upon completing of winding up the company); *Techmer Accel Holdings, LLC v. Amer*, 2010 Del. Ch. LEXIS 252, at *45-49 (Del. Ch. Dec. 29, 2010) (certificate of cancellation filed before company made a final settlement of its unfinished business was improper).

| | | |
|---|---|---|
| | well as Allied Academies, Pulsus, SciTechnol, and EuroSciCon,  as "subsidiaries" of OMICS International.  (*Id.* at 6, SMF ¶ 12.)  The FTC also notes that since at least 2009, Defendants have owned and operated several websites, including omicsonline.org, omicsgroup.net, imedpub.com, and archivesofmedicine.com, on which they claim to publish hundreds of academic journals on "science, health, and technology" and invite consumers to submit articles for publication.  (*Id.* at 10, SMF ¶ 21.) | |
| (4) | The FTC does not dispute that Defendant Gedela graduated from Andhra University, B.Pharm, M.Tech, Ph.D, and attended a post-doctorate program at Stanford University.  The FTC notes, however, that these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | ECF No. 89 at 7, Section II.A. first paragraph, fifth sentence |
| (5) | The FTC does not dispute that Defendant Gedela was awarded his Ph.D in 2007 at the age of 25 and, during his doctorate, received the Young Scientist Award from the Asian Human Proteome Organization (HUPO).  The FTC notes, however, that these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | ECF No. 89 at 7, Section II.A. first paragraph, sixth sentence |
| (6) | With respect to Defendants' factual assertion that they followed an "Open Access" publication model which enables the dissemination of research articles to the global community free-of-charge, the FTC notes that the | ECF No. 89 at 7-8, Section II.A. second paragraph, first sentence |

| | | |
|---|---|---|
| | only evidence is Defendant Gedela's self-serving and conclusory declaration.  The FTC further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | |
| (7) | With respect to Defendants' factual assertion that their "Open Access" model removes price and permission barriers that normally limit access and usage of published literature to only subscribed or licensed journals, the FTC notes that the only evidence is Defendant Gedela's self-serving and conclusory declaration.  The FTC further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | ECF No. 89 at 8, Section II.A. second paragraph, second sentence |
| (8) | With respect to Defendants' factual assertion that their "Open Access" publications were made available online, free-of-charge to anyone and everyone having internet access, the FTC notes that the only evidence is Defendant Gedela's self-serving and conclusory declaration.  The FTC further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | ECF No. 89 at 8, Section II.A. second paragraph, third sentence |
| (9) | With respect to Defendants' factual assertion that they developed their "Open Access" model in order to expand the knowledge base and advance the development of science, because Defendant Gedela believes scientists require unrestricted access to relevant scientific data and scholarly literature, the FTC notes that the only evidence is Defendant Gedela's self- | ECF No. 89 at 8, Section II.A. second paragraph, fourth sentence |

| | | | |
|---|---|---|---|
| | | serving and conclusory declaration.  The FTC further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | |
| (10) | | With respect to Defendants' factual assertion that they provide a more complete description of their corporate origin, publication model, and method of organizing conferences as an attachment to Defendant Gedela's declaration, the FTC notes that the only evidence is Defendant Gedela's self-serving and conclusory declaration.  The FTC further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | ECF No. 89 at 8, Section II.A. second paragraph, fifth sentence |
| (11) | | The FTC does not dispute that dissolution papers were filed as to the three corporate Defendants or that Defendants' primary internet website continues to publish "Open Access" scientific journals, through OMICS Online Publishing, an Indian entity.  The FTC notes, however, that apart from these filings, no other action has been taken to dissolve these entities and that these entities continue to be used in Defendants' publishing and conference business.  (ECF No. 86 at 3, SMF ¶ 5.)  The FTC also notes that, in any event, the purported dissolution does not alter these entities' amenability to suit or liability.  *See* Nev. Rev. Stat. § 78.585; Del. Code tit. 6, § 18-804.

With respect to Defendants' factual assertion that Defendants' journals have over 30 million readers, the FTC notes that the only evidence is Defendant Gedela's self-serving and conclusory declaration.  The FTC | ECF No. 89 at 8, Section II.A. third paragraph, first sentence |

| | | |
|---|---|---|
| | further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | |
| (12) | The FTC does not dispute that Defendants have more than 700 open access journals, or that Defendants' model may be a global forum for discussion and knowledge sharing through both its internet platform and global conferences.  The FTC notes, however, that Defendant Gedela claims that his businesses publish more than 1,000 journals, and Defendants admit to using over 950 journal names to solicit manuscripts for publication.  (ECF No. 86 at 10, SMF ¶ 21.)<br><br>        With respect to Defendants' factual assertion that their model is a global forum for discussion and knowledge sharing through both their internet platform and global conferences, the FTC notes that the only evidence is Defendant Gedela's self-serving and conclusory declaration. The FTC further notes these facts are not relevant to whether Defendants' marketing practices violated Section 5 of the FTC Act, and thus are not material facts. | ECF No. 89 at 8, Section II.A. third paragraph, second sentence |
| (13) | The FTC does not dispute that Defendants have received appreciation and invitation letters for hosting its conferences in many major cities.   The FTC notes, however, that a review of the letters attached show they are no more than ceremonial welcome letters routinely sent by mayors' offices to businesses organizing special events in their cities.  As such, they are not relevant or material to the question of whether Defendants marketed their | ECF No. 89 at 8, Section II.A. third paragraph, third sentence |

| | | | |
|---|---|---|---|
| | | conferences in a deceptive manner in violation of Section 5 of the FTC Act, and thus are not material facts. | |
| | (14) | Defendants' statement that their reputation as a reputable publisher and conference organizer has grown quickly, and more than 900 well-respected scientists who serve as executive editors/editor-in-chiefs have recommended OMICS' journals be published in PubMed Central is immaterial because it does not address the misrepresentations that the FTC has identified as deceptive.  In particular, Defendants have falsely represented that PubMed Central and Medline *have accepted* Defendants' journals.  Defendants' effort to show that some editors have recommended publication in PubMed Central only underscores that their representations are deceptive.<br><br>　　　In addition, Defendants statement mischaracterizes the evidence and relies on inadmissible materials.  First,  Attachment 4 to Exhibit A (ECF Nos. 33-4 – 33-9) is nothing more than a list of purported editors; there are no attached letters (and hence no evidence) indicating whether the purported scientist in fact served in an editorial capacity for Defendants' journals or supported Defendants' publications.<br><br>　　　Second, Attachment 5 to the original declaration (ECF Nos. 33-10 – 33-16), which does appear to contain letters purporting to recommend that Defendants' journals be included in indexing services, only contains a total of 97 pages, and thus does not support Defendants' factual assertion that more than 900 scientists have served in an editorial capacity for | ECF No. 89 at 8, Section II.A. third paragraph, fourth sentence |

Defendants' journals or that they have recommended Defendants' journals be published in Pub Med Central.  In addition, a review of the letters contained in Attachment 5 shows that for many letters there is no evidence that the letter-writer (notwithstanding his or her show of support for Defendants' journals) was in fact an editor or had agreed to serve as an editor.

Third, the FTC notes that when Defendants first submitted this list of purported editors as part of their opposition to the preliminary injunction, the FTC contacted 57 U.S.-based academics listed in that exhibit, and 12 of the 23 who responded indicated that they regretted their affiliation and endorsement of OMICS, or that they would not recommend OMICS' journals for indexing at this time.  (ECF No. 86 at 16-17, SMF ¶ 33.)

Finally, the FTC notes that Defendants claim to have as many as 50,000 experts serving as editors.  (*Id.* at 15, SMF ¶ 31.)  But the evidence shows that many individuals that Defendants claim are journal editors have not, in fact, agreed to serve in that role.  (*Id.* at 16, SMF ¶ 32.)  And Defendants have been unable to support their representations with any documentation showing tens of thousands who have agreed to serve as editors.  (*Id.* at 16-17, SMF ¶ 33.)

| | **B.  Defendants' Publishing Practices** | |
|---|---|---|
| (15) | Defendants' statements that (1) their publishing practices and charges are and have been completely transparent and are neither unfair nor deceptive, (2) authors/consumers wishing to publish an article may go to the website | ECF No. 89 at 8, Section II.B. first paragraph, first, second, and third |

| | |
|---|---|
| https://www.omicsonline.org/ and access the red button/link in the *middle of the home page* entitled "Article Processing Charges" and (3) when an author/consumer accesses this link, they are brought to the web page at https://www.omicsonline.org/article-processing-charges.php, where the fees to publish in each of the journals are clearly listed in USD, Euros and GBP are conclusory and not material. | sentences |

First, the statements in the declaration of Defendants' Indian counsel, Kishore Vattikoti that Defendants' practices are "completely transparent" and "not unfair or deceptive" are not sufficient to support a summary judgment motion because they are self-serving denials without supporting facts.

Second, while Defendants use multiple avenues to solicit manuscripts, these statements address a single webpage — ignoring many others where charges are not similarly disclosed.  In particular, Defendants omit the fact that they send out frequent emails to individuals employed in research or academia soliciting the submission of articles for their online publications, and, in numerous instances, those email solicitations contain no mention of any fees associated with the advertised publication service. (ECF No. 86 at 21, SMF ¶ 42.)  Defendants also omit the fact that their email solicitations invite consumers to submit articles for publication simply by responding to the email, meaning that consumers may never reach Defendants' websites.  (*Id.* at 21, SMF ¶ 43.)  Defendants also omit the fact that their solicitations urge consumers to submit papers to online

| | | |
|---|---|---|
| | portals that invite authors to upload manuscripts for editorial review, and the instructions and other content of these online portals have not disclosed fees.  (*Id.* at 22, SMF ¶ 44.)  Defendants also omit the fact that the home pages of many of their journals also do not clearly or conspicuously disclose that authors need to pay to publish their articles.  (*Id.* at 22, SMF ¶ 45.)  In some instances, Defendants bury their fee disclosures on secondary webpages that consumers would not otherwise need to visit.  (*Id.*)  Consumers going to a journal's homepage can navigate directly to the manuscript submission page without seeing any disclosure.  (*Id.*)  Thus, consumers need never see the disclosure referenced at Defendants' Exhibit C, Attachment 1. | |
| (16) | The FTC does not dispute that depending on the journal, the publication fee ranges from US $149 to US $3,619.  The FTC notes, however, that many consumers learn of Defendants' fees only after Defendants have accepted their articles for publication and sent consumers invoices requiring them to pay hundreds or thousands of dollars in publication fees. (ECF No. 86 at 23, SMF ¶ 46.) | ECF No. 89 at 8, Section II.B. first paragraph, fourth sentence |
| (17) | Defendants' statements that (1) next to the red button/link for "Article Processing Charges" on the webpage printout contained in ECF No. 89-4 are separate red button/links to web pages describing the practices for "Journal Impact Factor" (https://www.omicsonline.org/article-processing-charges.php), "Peer Review Process" (https://www.omicsonline.org/peer-review-process.php), and "Article Impact | ECF No. 89 at 9, Section II.B. second paragraph |

Factor"(http://www.articlesmetrics.com/), (2) each of these red buttons/links outline in detail the relevant subject matter and, respectively, explain the impact factor for each journal (along with a citations report for each journal), the process for conducting peer review for each article, and the measurements in calculating article quality, (3) there is also a button/link at the top of the primary web page entitled "Submit Manuscript" (https://www.omicsonline.org/Submitmanuscript.php) which fully describes the process for the submission and processing of manuscripts for authors, editors and reviewers using the online submission and review systems called Editorial Manager and Tracking System, and (4) the information included in these links is detailed and specific to the subject matter are not supported by admissible, non-conclusory evidence. First, the fact that Defendants publish the webpages described is not in dispute, but the only evidence that Defendants actually engage in the peer review, manuscript processing and other practices described is conclusory statements in declaration of Defendants' Indian counsel, Kishore Vattikoti.

Second, the statements regarding impact factors do not provide a foundation for summary judgment because they fail to address the fact that Defendants concede that none of their journals have a Thomson Reuters impact factor. (ECF No. 86 at 18-19, SMF ¶ 37.) Nonetheless, Defendants represent that their online publications have high impact factors, and their solicitation emails and journal websites often prominently display what purports to be an "impact factor." (ECF No. 86 at 17-18,

SMF ¶¶ 34-35.)  Defendants also omit the fact that their websites contain inconsistent descriptions of how their "impact factor" is calculated:  in some places, the impact factor is described as the Thomson Reuters impact factor based on Journal Citation Reports, in other places, it is described as an "unofficial impact factor" based on Google Scholar Citations.  (*Id.* at 19, SMF ¶ 38.)  Defendants also omit the fact that this alternative definition appears nowhere near Defendants' marketing claims for their journals.  (*Id.*)  Defendants also omit the fact that in other instances, Defendants make the general, unqualified claim that their journals have "high impact factors."  (*Id.*)  Defendants also omit the fact that their solicitation emails contain no qualifiers to alert consumers that the impact factor is not the metric calculated by Thomson Reuters.  (*Id.*)

With respect to the statements regarding the peer review process, there is no dispute that Defendants publish representations claiming they provide peer review; Defendants' motion, however, does not provide evidence that Defendants, in fact, conduct peer review that fulfills these representations.  Moreover, Defendants do not rebut the evidence that their peer review process is a sham — such as (i) testimony of consumers who submitted articles to Defendants for publication were surprised when their manuscripts were approved for publication within several days of submission and concerned that they received no comments or proposed revisions from peer-reviewers or only non-substantive feedback (*id.* at 13, SMF ¶ 25); (ii) John Bohannon, a scientist and writer for *Science* magazine

14

conducted an experiment where he submitted papers with obvious and egregious scientific flaws to two journals published by Defendants and that both journals accepted his flawed papers without any substantive comments (*id.* SMF ¶ 26); and (iii) a journalist for the Ottawa Citizen/Ottawa Sun submitted a flawed article (which combined text taken from Aristotle, unrelated modern words, and invented words, and was "unintelligible; some sentences in the manuscript did not have verbs and others did not make sense because words from the original text had been changed to produce gibberish") to one of Defendants' journals that published the manuscript without any changes. (*Id.* at 13-14, SMF ¶ 27.) Defendants also omit the fact that in standard industry practice, the peer-review process often takes at least several weeks and involves multiple rounds of substantive feedback from experts in the author's particular field of expertise. (*Id.* at 14, SMF ¶ 28.) Defendants also omit the fact that academics and professionals who agreed to serve on the editorial boards of Defendants' journals stated that they never received any manuscripts to review or that many purported editors indicated that they had never agreed to be affiliated with Defendants and had not reviewed any manuscripts for Defendants' journals. (*Id.* SMF ¶ 29.) Defendants also omit the fact that in response to the FTC's discovery requests for substantiation for their representations that all submitted manuscripts are peer-reviewed, Defendants records showed that only 49% of the published articles had some form of review, and that Defendants had no records at all for 166

journals.  (*Id.* at 14-15, SMF ¶ 30.)

Defendants also omit the fact that many individuals that Defendants claim are journal editors have not, in fact, agreed to serve in that role.  (*Id.* at 16, SMF ¶ 32.)  Defendants also omit the fact that after being compelled by this Court to provide a complete response to discovery requests for all documents reflecting agreement to serve as an editorial board member or to be affiliated with a journal, Defendants' response identified only 380 individuals who had agreed to serve as an editor on one of only 130 of Defendants' journals (out of 50,000 editors on over 700 journals claimed by Defendants).  (*Id.* at 16-17, SMF ¶ 33.)

Defendants also omit the fact that they represent that their publications are indexed in well-known, reputable indexing services such as MEDLINE and PubMed Central, going so far as to use the logos for such indices without permission.  (*Id.* at 19-20, SMF ¶ 39.)  Defendants omit the fact that they admit that none of their journals are indexed in PubMed Central or MEDLINE.  (*Id.* at 20, SMF ¶ 40.)  Defendants also omit the fact that they admit to receiving multiple notices from NIH that PubMed Central would not accept any journals from Defendants and that Defendants needed to stop making reference to PubMed Central on the journals and websites.  (*Id.* at 20-21, SMF ¶ 41.)  And Defendants omit the fact that despite warnings, Defendants have continued to tout their inclusion in PubMed and to claim that their journal publishing practices comport with the standards set by NIH.  (*Id.*)

| | **C. Consumer Complaint History** | |
|---|---|---|
| (18) | The FTC does not dispute that during the discovery period, the Defendants requested that the FTC produce copies of all consumer complaints made against the Defendants. | ECF No. 89 at 9, Section II.C, first sentence |
| (19) | The FTC does not dispute that, in response to Defendants' request for production of documents, it produced 61 complaints filed with the FTC's Consumer Sentinel and 16 complaints obtained from the Better Business Bureau.[4]  These complaints actually provide evidence of deception and demonstrate that Defendants' motion for summary judgment is unfounded. Although the raw number of complaints is not an element of liability under the FTC Act, these complaints show that Defendants practices have mislead reasonable consumers. The FTC also notes that the number of complaints is only one indicator of the magnitude of injury caused by a deceptive practice; only a small fraction of victims of deception submit complaints to government and consumer protection agencies.  (*See* SJX28 Att. A at 103 (FTC Bureau of Economics report noting that only 8.4% of consumer fraud victims complaint to an "official source" such as the federal government or the BBB).) | ECF No. 89 at 9, Section II.C, second sentence |
| (20) | Defendants' factual assertions that (i) only 20 of the 74 complaints involve a monetary issue; (ii) all 74 consumer complaints have been resolved; and | ECF No. 89 at 9, Section II.C, third and fourth |

[4] The FTC notes that, in addition to the 77 Sentinel and BBB complaints, the FTC produced documents relating to at least another 11 consumers with complaints against Defendants.  Of those complaints and documents, at least 50 involved Defendants' publishing activities and 35 involved Defendants' conference activities.

| | |
|---|---|
| (iii) a review of the complaint spreadsheets indicates how each complaint has been resolved are based solely on conclusory statements in declaration of their Indian counsel, Kishore Vattikoti.  The declaration does not describe the criteria used to characterize complaints as involving "a monetary issue;" and does not describe what sources were used to determine that complaints "have been resolved."  (*See* ECF No. 89-3 ¶ 9 (reciting numbers without describing sources or criteria).)[5]<br><br>        Furthermore, the FTC notes that whether a consumer complaint has been "resolved" by providing a refund of undisclosed fees or other remedy, or raises a "monetary issue" is not material to whether the Defendants have, and are, engaged in deception.  First, insofar as Defendants claim to have evidence that authors who complained about Defendants' deceptive practices eventually received refunds or withdrawal of articles, such evidence does not rebut, but underscores, that Defendants' practices have deceived consumers into paying fees and submitting manuscripts under | sentences |

---

[5] The Vattikoti declaration does not suggest that the characterization of the complaint or the references spreadsheets are from business records generated in the normal course of Defendants' operations.  (*Id.*)  Defendants cannot offer the declaration and spreadsheets as a summary of unidentified records because a prerequisite to admission of such a summary is that the underlying records must be made available so that an opposing party can verify the accuracy of the summary.  *Amarel v. Connell*, 102 F.3d 1494, 1517 (9th Cir. 1996) (a party must make available to the opposing party the materials that have gone into preparing a summary exhibit); *Paddack v. Dave Christensen, Inc.,* 745 F.2d 1254, 1261 (9th Cir. 1984) (citing inability to verify summary of information that is partially available to exclude summary of records that were not made available).  Defendants have not made available or even described records that could be the basis for the Vattokoti declarations' counts and spreadsheet entries purporting to describe the resolution of complaints, which precludes Defendants from relying on such information to seek summary judgment.  Fed. R. Civ. P. 37(c)(1) (information not properly disclosed may not be used to supply evidence on a motion).

false pretenses.  Second, Defendants' deceptive representations cause harm that is not strictly monetary, such as the time and resources consumers expend to convince Defendants to withdraw their articles, and consumers' inability to publish manuscripts elsewhere because ethical standards in the journal publishing industry generally prohibit the author from submitting the same work to another journal.  (ECF No. 86 at 24, SMF ¶ 48.) Consumers deceived by Defendants may be injured because Defendants' actions diminish their prospects for obtaining employment, tenure, grants, or other benefits from universities or other organizations that consider candidates' published work as a factor in their decision-making, and would negatively view someone associated with a disreputable journal.  (*Id.*) Thus, the complaint information — even as described by Defendants — is consistent with and reinforces the conclusion that Defendants practices have been and are deceptive.

### III.   DEFENDANTS FAIL TO DEMONSTRATE THAT THEY ARE ENTITLED TO SUMMARY JUDGMENT

#### A.  Legal Standard For Summary Judgment

Summary judgment is appropriate where the movant shows "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" if a rational trier of fact could find in favor of the nonmoving party on the evidence presented.  *Id.*  In reviewing the factual record, all

reasonable inferences must be drawn in favor of the non-moving party.  *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997).

When the nonmoving party bears the burden of proving a claim at trial, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *FTC v. AMG Services*, 2016 U.S. Dist. LEXIS 135765, at *10-11 (D. Nev. Sep. 30, 2016).  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).  If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  *AMG Services*, 2016 U.S. Dist. LEXIS 135765, at *11.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**B.   Because The FTC Does Not Need To Prove That Defendants' Actions Caused Substantial Injury To Consumers That Is Not Reasonably Avoidable By Consumers Themselves And Is Not Outweighed By Countervailing Benefits To Consumers Or Competition, Defendants Fail To Establish Their Summary Judgment Burden**

The bulk of Defendants' argument is based on the faulty premise that "the FTC has ***no authority*** to declare alleged acts or practices unlawful '***unless the act or practice causes***

20

***substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition***'" (ECF No. 89 at 10 (emphasis in original)) and that "to prevail under Section 5 of the FTC Act, the FTC must satisfy the standard of proof articulated under § 45(n) for each of its three causes of action."  (*Id.* at 12.)  Section 5(n) of the FTC Act, 15 U.S.C. § 45(n), however, sets forth the standard for determining whether an act or practice is ***unfair*** in violation of Section 5(a) of the FTC Act.  Thus, it has no application in this case, where the FTC is charging that Defendants' practices were ***deceptive*** in violation of Section 5(a) of the FTC Act.

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), declares unlawful acts and practices that are either unfair ***or*** deceptive.  Section 5(n) of the FTC Act, 15 U.S.C. § 45(n), states that a practice is ***unfair*** only when the FTC proves that "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition."  *See also FTC v. Neovi, Inc.*, 604 F.3d 1150, 1155 (9th Cir. 2010); *FTC v. Johnson*, 96 F. Supp. 3d 1110, 1151 (D. Nev. 2015).

Section 5(n) was added to the FTC Act by the FTC Act Amendments of 1994. Pub. L. No. 103-312 (1994).  The conference report on H.R. 2243, the bill that was ultimately enacted and signed into law, explains:

> The amendment is derived from the 1980 policy statement of the [Federal Trade] Commission regarding unfairness, the Commission's 1982 letter on the same subject, and from subsequent interpretations of and applications to specific unfairness proceedings by the Commission.

140 Cong. Rec. H 6006, *18 (July 21, 1994).

The FTC Statement of Policy on the Scope of the Consumer Unfairness Jurisdiction was appended to a letter that the sitting Commissioners sent on December 17, 1980 to Senators

21

Wendell H. Ford and John C. Danforth, the Chairman and Ranking Minority Member,

respectively, of the Consumer Subcommittee of the U.S. Senate Committee on Commerce,

Science, and Transportation.[6]  The purpose of that letter was to explain the FTC's views of the

boundaries of its consumer unfairness jurisdiction.  The letter explained that the companion FTC

statement "discusses the ways in which this body of law differs from, and supplements, the

prohibition against consumer deception." *Id.* at 1071.  This statement formed the basis for

Congress' amendment to Section 5 delineating the scope of the Commission's unfairness

jurisdiction.  In *Int'l Harvester*, the FTC explained:

> The Commission's unfairness jurisdiction provisions a more general basis for action
> against acts or practices which cause significant injury. **This part of our jurisdiction is
> broader than that involving deception, and the standards for its exercise are
> correspondingly more stringent.** It requires the complete analysis of a practice which
> may be harmful to consumers. To put the point another way, unfairness is the set of
> principles of which deception is a particularly well-established and streamlined subset.

*Id.* at 1060 (emphasis added).

The three-part test that the FTC must meet to establish that an act or practice is unfair is

distinct from the FTC's deception analysis.  To find a practice deceptive, it need not pass the full

cost-benefit analysis required for a determination of unfairness, because there are rarely, if ever,

countervailing benefits to deception.

Here, the FTC's complaint expressly charges Defendants with engaging in *deceptive* acts

or practices in violation of Section 5 of the FTC Act, not *unfair* acts or practices.  (ECF No. 1 at

13 ¶ 45 (count I charging that "the making of the representations as set forth in Paragraph 43 of

this Complaint constitutes a deceptive act or practice in violation of Section 5(a)"), at 13 ¶ 48

(count II charging that "the making of the representations as set forth in Paragraph 46 of this

---

[6] That letter and policy statement were thereafter appended to the FTC's decision in *In re Int'l Harvester Co.*, 104 F.T.C. 949, 1070-76 (1984).

Complaint constitutes a deceptive act or practice in violation of Section 5(a)"), at 14 ¶ 51 (count

III charging that "Defendants' failure to disclose or disclose adequately the material information

described in Paragraph 50, above, in light of the representation described in Paragraph 49, above,

constitutes a deceptive act or practice in violation of Section 5(a)").)  And because the FTC has

charged Defendants with engaging in deceptive acts or practices in violation of Section 5 of the

FTC Act, it does not need to show that Defendants' practices (1) caused substantial injury to

consumers (2) that consumers cannot reasonably avoid themselves and (3) which are not

outweighed by countervailing benefits to consumers or competition.  In short, the Section 5(n)

analysis has no application in this case.  *See FTC v. Cyberspace.com*, 453 F.3d 1196, 1199 n.2

(9th Cir. 2006); *FTC v. Cantkier*, 767 F. Supp. 2d 147, 152-53 (D.D.C. 2011); *FTC v. IFC Credit

Corp.*, 543 F. Supp. 2d 925, 947 (N.D. Ill. 2008).  Accordingly, the Court should deny

Defendants' motion for summary judgment.

### C. Even Under The Deception Standard, Defendants Fail To Establish Their Summary Judgment Burden

Even when evaluated using the proper legal standard, Defendants still fail to establish that

they are entitled to summary judgment.  As discussed in detail in the FTC's Motion for Summary

Judgment (ECF No. 86 at 28-32), an act or practice is deceptive under Section 5 if it involves a

material representation or omission that is likely to mislead consumers acting reasonably under

the circumstances.  *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009).  Express claims are

presumed material, *FTC v. Pantron I Corp.*, 33 F.3d 1088,1095-96 (9th Cir. 1994), and

consumer reliance on express claims are presumed reasonable.  *FTC v. Ivy Capital, Inc.*, 2013

U.S. Dist. LEXIS 42369, at *23 (D. Nev. Mar. 26, 2013).

Here, Defendants claim that their facts and exhibits "conclusively demonstrate" that they

did not violate Section 5.  This claim is unfounded for two reasons.  First, as detailed in the

FTC's Counterstatement, Defendants omit numerous material facts that demonstrate that their solicitations for journals and conferences include express claims that are false and misleading, and fail to disclose fees to authors.  Second, the only evidence offered by Defendants to prove their assertions that their solicitations are not deceptive are the conclusory, self-serving declarations  of individual Defendant Gedela and Defendants' counsel Kishore Vattikoti, accompanied by several attachments that lack any evidentiary foundation.  Such declarations are insufficient to satisfy Defendants' burden, as the moving party, to show there is no factual dispute that its representations are truthful and its disclosures are clear and unambiguous — particularly as the moving party's primary source of evidence.  *See Washington Physicians Serv. Ass'n v. Gregoire,* 147 F.3d 1039, 1048 (9th Cir. 1998) (conclusory affidavits insufficient to satisfy movant's burden in seeking summary judgment); *In re Rogstad,* 126 F.3d 1224, 1227 (9th Cir. 1997) (summary judgment motion denied because it that rests on affidavit that contains a conclusory denial of wrongdoing).  Indeed, far from "conclusively demonstrate[ing]" that no facts are in dispute, Defendant Gedela's and Mr. Vattikoti's declarations amount to little more than, "Defendants didn't do it," which Defendants fail to support with admissible, corroborating evidence.

### 1. Defendants Misrepresent Their Academic Journal Publishing Activities As Alleged In Count I

As detailed in the FTC's Counterstatements of Material Fact 14 and 17 above and the FTC's motion for summary judgment (ECF No. 86 at 11-13, 15-16, 17-18, 19-20, SMF ¶¶ 22, 23, 24, 31, 34, 35, 36, and 39), the evidence shows that Defendants represent that: (a) their journals follow peer review processes standard in the academic journal industry; (b) specific individuals are editors of, members of an editorial board for, or otherwise associated with, their

journals; (c) their publications have high impact factors listed in Thomson Reuters' Journal Citation Reports; and (d) their publications are included in well-known, reputable scholarly journal indexing services, such as Medline and PubMed Central.  And the evidence also shows that in numerous instances these representations were either false or misleading or were not substantiated at the time they were made.  (Counterstatements of Material Fact 14 and 17; ECF No. 86 at 13-15, 16-17, 18-19, 20-21, SMF ¶¶25, 26, 27, 28, 29, 30, 32, 33, 37, 38, 40, and 41.) Other than Defendant Gedela and Attorney Vattikoti's conclusory statements, Defendants offer no evidence that their claims were not deceptive.

Indeed, Defendants' motion does not dispute, or offer any exculpatory evidence, regarding the fourth alleged misrepresentation of Count I, namely that falsely represented that their journals were indexed in Medline and PubMed Central to bolster their reputation and prestige.  (*See* ECF No. 1, at 13 ¶ 43.d.)  Defendants do not dispute that, in numerous webpages, they represented that journals had been accepted in these prestigious libraries even though it was not, and still is not, true.

Defendants also do not dispute that they represent that all articles published in their journals are subjected to peer review by experts, but incorrect assert that these representations are "not misleading or deceptive." (ECF No. 89 at 14.)  Their only evidence is Defendant Gedela's statement claiming that Defendants use a third-party commercial service, Editorial Manager System, as part of their peer review process.  (*Id.*)  This fact, though, is not material in assessing whether Defendants' representations regarding their peer review process is deceptive. Aries Systems Corporation's Editorial Manager System is a customizable software that many publishers use to facilitate author submission of digital manuscripts, assignment of reviewers, and tracking of documents.  (*See* SJX28 Att. B at 176-77 (Aries Systems Corporation, Editorial

Manager® product description).)  Editorial Manager, however, is not synonymous with peer review, and the fact that a publisher uses this software does not mean that the publisher actually conducts such review, or has qualified experts and editors engaged to perform the type of review that Defendants advertise.  Indeed, as detailed in Counterstatement of Material Fact 17, Defendants had a record of some form of review for only 49% of their published articles.[7] Defendants have not been able to substantiate their claims that 50,000 experts perform peer reviews for their journals, and several of the specific individuals they list as editors attest that they have do not serve as editors for these journals.  (ECF No. 86, SMF ¶¶ 32, 33.)  The fact that Defendants use a tracking software such as Editorial Manager does not demonstrate that their representations that they have tens of thousands of experts reviewing articles, and only publish those approved through such review, are accurate.  Thus, Defendants fail to provide any material evidence that their peer review and expert claims violate Section 5 of the FTC Act.

Similarly, Defendants assert that they did not mislead consumers into thinking that Defendants' journals had high impact factors listed in Thomson Reuters' Journal Citation Reports — citing as their sole support a conclusory statement in Defendant Gedela's declaration.  (ECF No. 89 at 15.)  The FTC has charged, and Defendants have not refuted, that Defendants

---

[7] During discovery, Defendants identified a list of articles published by their journals and records of manuscript reviews.  For numerous journals, Defendants had no evidence that manuscripts submitted to those journals had been reviewed in any manner.  The manuscript review records produced by Defendants did not have a single entry for 166 journals that Defendants advertised as being peer-reviewed publications.  Moreover, even where Defendants could provide some evidence of review, their records did not demonstrate that these reviews were the rigorous peer review by qualified experts that Defendants' advertised.  The spreadsheet files produced by Defendants often provided nothing more than minimal notation that a given manuscript was submitted and accepted.  Some of the records report dates of acceptance, but no evidence that an expert reviewer actually evaluated the manuscript before acceptance; other records include written comments, but lack information on qualifications of reviewers or editors.  (ECF No. 86 at 14-15, SMF ¶30.)

represent that their journals have high impact factors and include impact factor numbers without disclosing or disclosing adequately that the listed impact factors are their own calculations and not those of Thomson Reuters.  (*See, e.g.,* Counterstatement of Material Fact 17; ECF No. 86 at 17-19, SMF ¶¶ 34-38.)  Defendants' inconspicuous disclaimers do not cure their misleading impact factor representations.  *See, e.g., Kraft, Inc. v FTC*, 970 F.2d 311, 325-36 (7th Cir. 1992); *FTC v. OMICS Group Inc.*, 2017 U.S. Dist. LEXIS 161910, at *5-6 (D. Nev. Sep. 29, 2017). Thus, Defendants fail to provide any material evidence that their impact factor representations are not deceptive.

### 2.   Defendants Misrepresent Their Scientific Conference Activities As Alleged In Count II

With respect to their conference activities, Defendants assert that they are entitled to summary judgment because their conferences are "well-known and respected" and "at no point in time [have] ever intended to deceive or mislead any individual."  (ECF No. 89 at 15.)  Neither of these assertions are material to Count II.  The FTC has alleged that Defendants represent that specific individuals have agreed to participate in Defendants' conferences when those representations are either false or misleading or lacking substantiation.  (ECF No. 1 ¶¶ 38, 39, 46.)  Count II does not concern the general reputation of conferences, and the FTC does not need to prove that Defendants' misrepresentations that experts had agreed to participate were made with an intent to defraud or deceive or in bad faith.  *See, e.g., Removatron Int'l Corp. v FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989); *FTC v. World Travel Vacation Brokers*, 861 F.2d 1020, 1029 (7th Cir. 1988); *OMICS Group Inc.*, 2017 U.S. Dist. LEXIS 161910, at *5; *FTC v. AMG Servs.*, 2017 U.S. Dist. LEXIS 66689, at *17 (D. Nev. May 1, 2017).

Finally, Defendants' assertion that "[t]hese conferences are in fact attended and promoted by well-known academics and researchers" (ECF No. 89 at 15) does not support summary judgment for two reasons.  First, Count II does not allege that academics and researchers *never* attend Defendants' conferences.  Rather, it states that, in numerous instances, Defendants' lists

of conference panelists and event organizers include individuals who never agreed to serve in those capacities. (ECF No. 86 at 25-26, SMF ¶ 51.) The FTC's evidence confirms these allegations; in a survey of individuals that Defendants listed as organizers and participants in a random sample of Defendants' conferences, approximately 60% of Defendants' conferences advertised organizers or participants who had not, in fact, agreed to serve in such capacities. (*Id.*, SMF ¶ 53).

Second, the only evidence that Defendants offer to show that they accurately advertise who has agreed to participate in conferences are conclusory statements by Defendant Gedela and Indian Attorney Vattikoti. During discovery, Defendants also could not point to evidence to substantiate their conference advertising. When the FTC asked Defendants to substantiate their claims that various academics had agreed to be associated with Defendants' conferences, Defendants produced nothing. (*Id.*, SMF ¶ 54.) Thus, Defendants' motion is not supported by evidence that contradicts Count II, and the evidence from purported conference participants confirms that Defendants' conference advertisements are misleading.

### 3. Defendants Fail To Disclose Adequately Their Publishing Fees As Alleged In Count III

Finally, as detailed in the FTC's Counterstatements of Material Fact 15 and 16 the FTC's summary judgment motion (ECF No. 86 at 21-24, SMF ¶¶ 42, 43, 44, 45, 46, 47, and 48), Defendants use a variety of platforms to solicit articles for publication, including emails to authors, journal-specific webpages, and online portals to upload manuscripts for review. Count III alleges that Defendants' solicitations fail to disclose or disclose adequately that consumers must pay a publishing fee ranging from several hundred to several thousand dollars.

Defendants' motion for summary judgment does not confront the absence of information about fees in these solicitations but, instead, rests on the conclusory assertion that Defendants fees "are and have been completely transparent and are neither unfair nor deceptive" (ECF No.

89 at 8.)  Defendants' conclusory declarations are inadequate to serve as evidence to sustain

summary judgment for the reasons discussed above.  Defendants' motion also fails to satisfy

their burden for two additional reasons.

First, Defendants' motion does not address the platforms in which Defendants provide no

information on fees.  Indeed, the motion (and associated declarations) only address one

solicitation — the webpage that appears at www.omicsonline.org.  (ECF No. 89-3 ¶ 6.)  The

motion simply ignores, and presents no material evidence concerning, consumers who were

induced to submit manuscripts through Defendants' many emails, journal pages and methods of

solicitations.

Second, Defendants have not shown that their cherry-picked example is not misleading.

In assessing whether a solicitation is deceptive, courts are directed to consider the "net

impression" created by a representation, even when the solicitation might contain some truthful

disclosure — particularly when the disclosure is must be ferreted out or obscured.

*Cyberspace.com*, 453 F.3d at 1200; *FTC v. AMG Servs.*, 29 F. Supp. 3d 1338, 1365 (D. Nev.

2014) ("Deception may be found based on the 'net impression' created by a representation.  This

means that the court employs its 'common sense' and that a section 5 violation is not determined

by fine print, technicalities, and legalese"); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 528

(S.D.N.Y. 2000) ("[T]he Court must consider the misrepresentations at issue, by viewing them as

a whole without emphasizing isolated words or phrases apart from their context.").  The solitary

webpage discussed in Attorney Vattikoti's declaration (ECF No. 89-4) does not list charges, is

not designed to present charges to authors before they submit manuscripts, and does not rebut the

testimony of authors who have stated that Defendants did not disclose any charges when they

submitted their manuscripts for review.  (*See, e.g.,* ECF No. 9-9 at 2 ¶ 5 (invoice was first

mention of fees); ECF No. 9-12, at 2 ¶ 4 (same).)  Thus, Defendants discussion of a single

webpage, in isolation, does not controvert the evidence that Defendants do not adequately

disclose that they charge consumers who submit manuscripts for publication.

## IV.    CONCLUSION

Accordingly, for the reasons set forth herein, the FTC respectfully requests that this Court

deny Defendants' motion for summary judgment.

Respectfully submitted,

ALDEN F. ABBOTT
General Counsel

Dated:  May 22, 2018

*/s/ Gregory A. Ashe*
IOANA RUSU GORECKI
GREGORY A. ASHE
MICHAEL E. TANKERSLEY
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-2077 (Gorecki)
Telephone: 202-326-3719 (Ashe)
Telephone: 202-326-2991 (Tankersley)
Facsimile: 202-326-3768
Email: igorecki@ftc.gov, gashe@ftc.gov,
          mtankersley@ftc.gov

DAYLE ELIESON
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, NV 89101
Telephone: 702-388-6336
Facsimile: 702-388-6787
Email: blaine.welsh@usdoj.gov

*Attorneys for Plaintiff*
FEDERAL TRADE COMMISSION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 22, 2018, a true and correct copy of **FTC'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was filed electronically with the United States District Court for the District of Nevada using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

*/s/Gregory A. Ashe*
Attorney for Plaintiff Federal Trade Commission
