D. NEAL TOMLINSON
Nevada Bar No. 06851
neal@hyperionlegal.com
KRISTINA R. KLEIST
Nevada Bar No. 13520
kristina@hyperionlegal.com
Hyperion Advisors
3960 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 990-3901
Fax: (702) 999-3501

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | Case No. 2:16-cv-02022-GMN-VCF |
| Plaintiff, | |
| v. | DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| OMICS GROUP INC., et al., | |
| Defendants. | |

Defendants, OMICS GROUP INC. ("OMICS"), IMEDPUB LLC ("iMedPub"), CONFERENCE SERIES LLC ("Conference Series"), and SRINUBABU GEDELA ("Dr. Gedela"), by and through their counsel of record D. Neal Tomlinson, Esq. and Kristina R. Kleist, Esq., of the law firm Hyperion Advisors, hereby submit this Reply in Support of Motion for Summary Judgment (Dkt. No. 89).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

This Reply is made pursuant to Fed. R. Civ. P. 56 and is based on the attached Memorandum of Points and Authorities, the papers and pleadings on file in this action, and any oral argument this Court may consider.

DATED this 22nd day of June, 2018.

                                                      Respectfully submitted,

                                                     HYPERION ADVISORS

                                                     /s/ *D. Neal Tomlinson*
                                                     D. NEAL TOMLINSON
                                                     Nevada Bar No. 06851
                                                     KRISTINA R. KLEIST
                                                     Nevada Bar No. 13520
                                                     3960 Howard Hughes Parkway, Suite 500
                                                     Las Vegas, Nevada 89169

                                                     *Attorneys for Defendants*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The FTC asserts that it "has amassed voluminous and incontrovertible evidence that Defendants have engaged in deceptive acts and practices in connection with marketing their academic publishing and conference services." (Opposition: 1, 2-4). To the contrary, the "voluminous and incontrovertible" evidence is comprised of: (1) thirteen declarations dating from 2013-2016 from actual individuals with complaints regarding Defendants publishing or conference practices; (2) declarations from two reporters with specific intent to discredit Defendants; (3) four declarations from FTC employees providing self-serving testimonials based on hearsay regarding their efforts to create and find complainants; (4) declarations from an FTC economist and an FTC analyst analyzing documents and information received in discovery, but purporting to identify statistical truth based on limited information; and, (5) the declaration and report of an "expert" who can only be described as a pay-for-access supporter and fundamentally opposed to the open-access model of Defendants.

The evidence falls short of substantiating the allegations and the absurd request for $50 million in monetary damages. Accordingly, this Court should reject the FTC's assertions and enter summary judgment in Defendants' favor.

**II.    REPLY TO FTC'S COUNTERSTATEMENT OF FACTS**

The FTC has made the effort to include lengthy reiterations of the facts contained in the Motion; however, only a few are worth responding to here.

**Reply to Response Identified as Paragraph 14**. The FTC argues that Defendants misrepresent the reputation of their business and mischaracterize the evidence which has been presented to support the contention that Defendants are reputable publishers. However, the FTC chooses only to highlight their own staff's inquiry into identified editors as rebuttal. In fact, they claim that Defendants have provided no evidence, when their own purported "evidence" is nothing more than declarations with a summary of hearsay statements from individuals claiming they regretted their affiliation and endorsement or that they would not recommend Defendants' journals for indexing. (Opposition: Pg 10, Ln 10-14).

As with many issues in this case, when the FTC believes something to be true, they cannot and will not accept that something is possible in any other way. Defendants are not required by law to obtain a written agreement or consent from each individual who becomes an editor for a journal which they publish. The FTC cannot rely on non-evidence as their evidence to attempt to prove that Defendants have made misrepresentations which the FTC has deemed deceptive.

**Reply to Response Identified as Paragraph 15**. The FTC specifically points out that Defendants use multiple avenues to solicit manuscripts and that not all communications identify the specific publishing fee. Furthermore, the FTC contends that a fee disclosure must be made essentially on each and every webpage a customer may visit. To require Defendants to put a fee notice on each and every webpage on their websites as well as in each and every communication where they may request that an individual submit an article to one of the journals they publish is an absurd standard, one which is not supported by any law. The individuals being referred to here are highly educated and sophisticated with respect to academic publishing. The fact that there is a fee associated with publishing an article is not an unknown concept. Furthermore, the specific fee for any particular article is not always determined before an article is submitted. Defendants do clearly and adequately disclose their publishing fees and do not do so in a misleading or deceptive manner.

**Reply to Response Identified as Paragraph 17**. The FTC wants to pick and choose webpages they believe support their position, but take issue with webpages Defendants point to as clear evidence of what consumers see and how they actually interact during the publishing process. The webpages say what they say and are posted online for the world to see. With respect to the "Peer Review Process" (https://www.omicsonline.org/peer-review-process.php), the webpage transparently describes the process and clearly explains that OMICS "is following different review strategies for each and every journal as per the editorial board guidelines", and then provides a flowchart of each stage of the overall review process. *See*, Defendants' Motion for Summary Judgment (Dkt. No. 89) Exhibit C and Defendants' Opposition to FTC's Motion for Summary Judgment Exhibit A at ¶¶23-29. Although mistakes can and do infrequently



**Reply to Response Identified as Paragraph 19 and 20**. The consumer complaint data was provided by the FTC and speaks for itself – it is without question extremely minimal when considering the number of journals, published articles, and millions of readers. *See,* Motion Exhibit C at ¶ 9, Attachment 2 (spreadsheets of relevant complaint data provided by the FTC). Because it is so minimal, it is no surprise the FTC wants to criticize the complaint data and summary as "not material", even though this same limited complaint data was the purported basis for bringing this action.

### III. ARGUMENT

#### A. Defendants' Practices are Not Deceptive and the FTC's Allegations Lack Factual and Legal Support

##### a. Even Under the FTC's Alleged "Proper" Deception Standard, the FTC Fails to Substantiate a Section 5 Violation of the FTC Act

Clearly the FTC would prefer to have this matter decided on the "easier" standard identified as the standard for deception actions as opposed to actions pursued as unfair. (Opposition: Pgs. 20-23). To establish a Section 5 violation, the FTC must show the representation, omission, or practice is (1) "likely to mislead consumers acting reasonably under the circumstances (2) in a way that is material." *F.T.C. v. Cyberspace.Com LLC,* 453 F.3d 1196, 1199 (9th Cir.2006). To determine whether a representation, omission, or practice is likely to mislead, the Court considers the overall net impression the representation creates. *Cyberspace.Com,* 453 F.3d at 1200. As to the reasonable person determination, courts generally have limited the inquiry to the relevant audience. *See Floersheim v. F.T.C.,* 411 F.2d 874, 877 (9th Cir.1969) (noting the Commissioner did not find the collection form's disclaimer sufficient

where the target consumer was often of low income with minimal formal education); *Removatron Int'l Corp. v. F.T.C.,* 884 F.2d 1489, 1497 (1st Cir.1989) (finding the target consumer is not limited to the beauty industry because Removatron advertised in local print media as well). "[a] representation does not became `false and deceptive' merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed." *Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 175 (1984). A representation, omission, or practice "is material if it involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product." *Cyberspace.Com,* 453 F.3d at 1201 (internal quotation omitted).

### i. Defendants' Publishing Practices Are Not Likely to Mislead Consumers Acting Reasonably Under the Circumstances in a Way That is Material

The key factor to consider in this matter when determining whether Defendants' publishing practices are deceptive is whether the consumer was acting reasonably under the circumstances. As has been previously stated by Defendants on multiple occasions, the consumer in this matter *is not the average individual*. When limiting the inquiry to the relevant audience, this Court must look *only* to educated and knowledgeable individuals seeking to publish academic articles and research. This is a very small and particular segment of the population. These individuals are not naïve when it comes to the publishing process. In contrast to the examples above, Defendants are not working with individuals who have a lack of education nor are they peddling a product to the general public which could be misunderstood or misinterpreted. As such, the FTC has not put forth evidence which supports the allegation that a *reasonable* consumer would likely be misled by Defendants' publishing practices and Defendants' Motion for Summary Judgment should be granted.

### ii. Defendants' Conference Practices are not Likely to Mislead Consumers Acting Reasonably Under the Circumstances in a Way That is Material

Like the consumers who publish in the OMICS journals, conference attendees are not

Page 6

the general public – they are authors, scientists, academics, researchers and doctors. When these sophisticated consumers wish to attend a scientific conference may go to the same website https://www.omicsonline.org/ and access the button/link at the *top of the home page* entitled "Conferences" https://www.omicsonline.org/international-scientific-conferences/, and from there they may select either "Upcoming" or "Previous" conferences. *See,* Motion Exhibit C at ¶ 11. Again, the conference information is transparent and contains the best information available at the time. Speakers and agendas are fluid and sometime change, but the Defendants transparently post the most relevant and best information available for each conference, which is neither unfair nor deceptive. *Id*.

### iii. Defendants' Publishing Fee Practices are not Likely to Mislead Consumers Acting Reasonably Under the Circumstances in a Way that is Material

It is hard to imagine a more transparent fee disclosure. The sophisticated authors who wish to publish need to go no further than the **home page**[1] (https://www.omicsonline.org/) and access the link for "Article Processing Charges" (https://www.omicsonline.org/article-processing-charges.php). *See* Motion Exhibit C at ¶ 6, Attachment 1. The fees to publish in each of the journals are clearly listed in USD, Euros and GBP. *Id*. A reasonable consumer would at the very least visit the publishers homepage prior submitting an article for publication. The image of the home screen clearly shows that the article processing charges appears front and center on the screen and when you click on the bright red button, it takes you to a detailed list of journals and their associated fees.

### IV.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT

As identified by Plaintiff themselves, when the nonmoving party bears the burden of proving a claim at trial, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

---

[1] True and correct screenshots of Defendants' home page and article processing page taken on June 22, 2018 are attached hereto as Exhibit A.

Page 7

that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986); FTC v. AMG Services, 2016 U.S. Dist. LEXIS 135765, at *10-11 (D. Nev. Sep. 30, 2016). (Opposition: 20, 3-9). In this case, Defendants have done both.

### A. Defendants Have Presented Evidence Which Negates Essential Elements of the FTC's Case

Defendants clearly operate their business through the primary website (https://www.omicsonline.org/).  This is the same website which contains all the transparent information relating to each claim presented by the FTC in its Complaint – Count I Misrepresentations Regarding Journal Publishing; Count II Misrepresentations Regarding Conferences, and Count III Deceptive Failure to Disclose Publishing Fees.  The information is plainly disclosed on the website. Motion at ¶¶ 8, 9, 12-14.  It is nonsensical to think that authors considering publishing an article on this same website would not bother to visit the website and look at the relevant article publishing information.  It is nonsensical to think that potential conference attendees would not bother to visit the website and look at the program schedule and other conference information.  It is nonsensical to think that prospective authors would not bother to visit the website and look at the publishing guidelines, fees and charges – all plainly displayed for all to see. *See*, Motion Exhibit C.

The volume and totality of this information negates the essential elements of each of the FTC's claims.  Although Defendants cannot ensure that each author or conference attendee will read and comprehend the information available to them, they have done the next best thing by posting all material information in a clear and conspicuous manner.  Critical elements of the FTC's claims are further negated by the fact that this is a specialized audience – a sophisticated audience that knows what they are doing and why they are doing it.  Finally, the FTC's own consumer complaint data, coupled with the full disclosure of all material information on the website, further negates elements of the FTC's claims and demonstrate that Defendants practices are not likely to mislead consumers acting reasonably under the circumstances in a way that is

material.

## B. Defendants Have Demonstrated that the FTC has Failed to Make a Showing Sufficient to Establish Essential Elements of Their Case Which They Will Bear the Burden of Proof at Trial

The FTC's insufficient, self-serving declarations based on hearsay do not and cannot make a showing sufficient enough to establish the essential elements of their claims. Their case was flawed from the beginning as it was based on 1) the protectionist complaints of traditional publishing industry insiders, and 2) questionable fake news bloggers.  The FTC's flawed case never got better and their self-serving "evidence" falls short of substantiating the allegations and the absurd request for $50 million in monetary damages. Accordingly, this Court should reject the FTC's assertions and enter summary judgment in Defendants' favor.

## V. CONCLUSION

For the above reasons, Defendants respectfully request that this Court grant Summary Judgment in favor of all Defendants.

DATED this 22nd day of June, 2018.

Respectfully submitted,

HYPERION ADVISORS

 /s/ *D. Neal Tomlinson*
D. NEAL TOMLINSON
Nevada Bar No. 06851
KRISTINA R. KLEIST
Nevada Bar No. 13520
3960 Howard Hughes Parkway, Suite 500
Las Vegas, Nevada 89169

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 22, 2018, a true and correct copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was filed electronically with the United States District Court for the District of Nevada using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system.

/s/ *D. Neal Tomlinson*
Attorney for Defendants